### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AMY D. BARTON, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 06-1349-MLB |
| | ) | |
| WAECHTER, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Before the court are defendant Robert Reeves d/b/a Reeves Trucking's ("Reeves" or "Reeves Trucking's") motion for summary judgment (Doc. 114) and responsive briefing thereto (Docs. 121, 122, 123, 124, 125, 129); defendants NYK Group Americas, Inc. ("NYK") and Landstar Systems, Inc.'s ("Landstar's") motion for summary judgment (Doc. 115) and responsive briefing thereto (Docs. 128,[1] 133); and NYK and Landstar's motion to strike the expert report of Lewis J. Grill (Docs. 79, 80), plaintiff's expert on liability, and responsive briefing thereto (Docs. 83, 85, 86).

Reeves Trucking's motion for summary judgment (Doc. 114) is DENIED and NYK and Landstar's motion for summary judgment (Doc. 115) is GRANTED for the reasons stated more fully herein. NYK and Landstar's motion to strike (Doc. 79) is DENIED as moot.

---

[1] Plaintiff's initial response to NYK and Landstar's motion for summary judgment (Doc. 126) violated this court's standing order regarding page limits. Apparently realizing her error, plaintiff filed a corrected response six days later (Doc. 128) that abided by the court's standing order. It is the corrected response that the court considers in ruling on NYK and Landstar's motion for summary judgment.

## I.  INTRODUCTION

All parties agree that this case arises from a tractor-trailer/ automobile accident that occurred during the early morning hours of January 12, 2005, on Interstate 70 in northwest Kansas.  (See generally Docs. 80 at 2, 83 at 2-3, 114, 116 at 5, 123 at 1.)  Paul Barton died as a result of that accident and plaintiff Amy Barton brings claims, generally sounding in negligence, on behalf of Paul Barton's estate and his heirs.  (See generally Doc. 96.)  Much of the factual circumstances surrounding the 2005 accident are immaterial to the resolution of the motions now before the court, although additional facts will be introduced where relevant.  Any factual disputes will be noted in discussion of each moving defendant's motion for summary judgment.

## II.  SUMMARY JUDGMENT STANDARDS

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. Am. Guarantee & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Adler).  The mere existence of

some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be material. Renfro v. City of Emporia, 948 F.2d 1529, 1533 (10th Cir. 1991).

A defendant initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Adler, 144 F.3d at 670. Because plaintiff bears the burden of proof at trial, defendants need not "support [a] motion with affidavits or other similar materials negating [plaintiff's]" claims or defenses. Celotex, 477 U.S. at 323 (emphasis in original). Rather, a defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim. See Adler, 144 F.3d at 671 (citing Celotex, 477 U.S. at 325).

If a defendant properly supports its motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000). In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Adler, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir. 1994). Plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793

(10th Cir. 1988).  Put simply, plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. <u>Prenalta Corp. v. Colo. Interstate Gas Co.</u>, 944 F.2d 677, 684 (10th Cir. 1991).

## III.  REEVES TRUCKING'S MOTION

Robert Reeves, as a sole proprietor, and Reeves Trucking owned the tractor-trailer involved in the January 2005 automobile accident. Reeves leased the tractor-trailer to Waechter, L.L.C. from 2005 to 2006.  As the lessee, Waechter, L.L.C. chose the driver of the tractor-trailer, paid the wages of the driver, and paid for the insurance, permits, tags, licenses, and fees necessary to the operation of the unit as part of its commercial trucking business. Compensation for the lease was settled on a monthly basis.  Waechter, L.L.C. received eight percent of gross revenues as well as reimbursement of all expenses.  Reeves Trucking received the balance. Waechter, L.L.C. had no ownership interest in the tractor-trailer and Reeves Trucking was responsible for maintenance of the vehicle.

The driver of the tractor-trailer was Michael Williams,[2] who was an employee of Waechter, L.L.C.   Reeves Trucking did not select Williams to drive the tractor-trailer, did not have the power to select any Waechter, L.L.C. employee to be a driver, and did not have the power to prohibit any Waechter, L.L.C. employee chosen by Waechter, L.L.C. from driving the tractor-trailer.   Reeves was, however, an hourly employee of Waechter, L.L.C., and worked for Waechter, L.L.C. as a driver dispatcher.   On these facts, Reeves Trucking moves for summary judgment.

Plaintiff's amended complaint brings the following causes of action against Reeves Trucking: 1) negligent hiring, training, and

---

[2]  Plaintiff also asserts that: 1) Williams was hired as a truck driver for Waechter, L.L.C. in 1999; 2) Williams stated on his employment application that his CDL license was previously suspended for "not paying tickets on time & too many tickets;" 3) Williams was unable to show any work history for the previous three years; 4) Williams' file shows no evidence that Waechter, L.L.C. investigated Williams' driving record; 5) there is no evidence that Williams was given a road test or refresher training; 6) Williams' medical examination indicated a sleep disorder and the medical examiner recommended a sleep study for evaluation of sleep apnea and follow-up for blood pressure control although there is no record that this was done; 7) between Williams' hiring in 1999 and 2005, Williams underwent only one regulatory required annual review, in August 2004; and 8) Williams' log book indicates his son was his co-driver for portions of his trip, although there is no evidence that Williams' son received required drug testing prior to driving the tractor-trailer.

In addition, regarding the January 2005 accident, plaintiff establishes that: 1) at the time of the accident Williams had been driving for nearly nine hours without a break over a distance of approximately 500 miles; 2) the weather conditions in the vicinity of the accident were wet, cold, and foggy; 3) at the time of the accident, Williams was driving too fast for the conditions; 4) the load securement chains on the tractor-trailer were insufficient; and 5) the tire tread depth of one of the tractor-trailer's tires was insufficient.

Reeves Trucking does not dispute these assertions because it does not have to at this juncture.   By noting them, the court is not suggesting that any or all of them are not subject to dispute as the case proceeds.

supervision; 2) negligent entrustment; 3) failure to train; 4) failure to maintain equipment; 5) failure to secure the shipping container; 6) failure to obey state and federal mandates. (Doc. 96 at 7-8.) Plaintiff alleges the negligent entrustment, negligent failure to equip, and negligent maintenance claims as stand alone bases of liability against Reeves Trucking. In addition, plaintiff alleges vicarious liability arising from a joint venture (and resultant principal/agent relationship) for the general allegations of negligence. Neither party is clear on what claims plaintiff continues to pursue against Reeves Trucking, but it is clear that defendant moves for summary judgment on all plaintiff's claims against it.[3]

**A.   Joint Venture - Vicarious Liability for Waechter, L.L.C. and Williams' Negligence**

Plaintiff seeks to establish Reeves Trucking's vicarious liability for Waechter, L.L.C. and Williams' alleged negligence by showing Reeves Trucking participated in a joint venture with Waechter, L.L.C. "Vicarious liability is a term generally applied to legal liability which arises solely because of a relationship and not because of any actual act of negligence by the person held vicariously liable for the act of another." <u>Leiker v. Gafford</u>, 245 Kan. 325, 355,

---

[3] As discussed in more detail below, defendants NYK and Landstar moved to strike the expert report of plaintiff's expert Lewis J. Grill. Reeves Trucking, however, did not move to strike Grill's expert report. Plaintiff relies, in part, on that report to support her additional statements of fact in her response. In its reply, Reeves Trucking does not object to plaintiff's use of Grill's report. Therefore, the court need not evaluate the propriety of the use of Grill's report in conjunction with Reeves Trucking's motion for summary judgment. As with plaintiff's other factual assertions, the parties should not view this as a judicial endorsement of Grill's opinions. On the contrary, the court anticipates that Grill's opinions may be the subject of a <u>Daubert</u> motion and/or a motion similar to NYK and Landstar's motion to strike. <u>See</u> note 7 <u>infra</u>.

778 P.2d 823, 844 (Kan. 1989), *overruled in part by* Martindale v. Tenny, 250 Kan. 621, 829 P.2d 561 (Kan. 1992).  When a joint venture is established, "liability is imputed to all participants." Cullip v. Domann, 266 Kan. 550, 556-57, 972 P.2d 776, 782 (Kan. 1999).  "The essential elements to establish joint venture liability are 1) an agreement; (2) a common purpose; 3) a community of interest; and 4) an equal right to a voice accompanied by an equal right of control over the instrumentality causing the injury." Cullip, 266 Kan. at 558, 972 P.2d at 783 (internal citations omitted).

"The party claiming the existence of a joint venture has the burden of proof." Sunfresh, Inc. v. Bean Acres, Inc., 180 F. Supp. 2d 1224, 1233 (D. Kan. 2001).  Only when the relationship between the parties is undisputed and the facts and circumstances <u>clearly show</u> no right to control is the issue of joint enterprise to support vicarious liability one of law for the court to determine. Cullip, 266 Kan. at 558, 972 P.2d at 783 (citing Scott v. McGaugh, 211 Kan. 323, 331, 506 P.2d 1155, 1162 (Kan. 1973)); see also Senne & Co., Inc. v. Simon Capital Ltd. P'ship, No. 93,434, 2005 WL 1805438, at *5 (Kan. Ct. App. July 29, 2005) ("What constitutes agency and whether there is competent evidence reasonably tending to prove the relationship is a question of law.  Although what constitutes agency is a question of law, resolution of conflicting evidence which might establish its existence is for the finder of fact.  The weight to be given evidence and resolution of conflicts therein are functions of the trier of facts in the determination of whether there is a relationship of principal and agent.  Where the existence of agency is disputed, its existence or nonexistence is ordinarily a question of fact for the

jury, to be determined upon proper instructions." (quoting <u>Barbara Oil Co. v. Kan. Gas Supply Corp.</u>, 250 Kan. 438, 446-47, 827 P.2d 24, 31-32 (1992))).

Regarding joint ventures, the pattern jury instructions for Kansas[4] state:

> A joint venture is an association of two or more persons or corporations to carry out a single business enterprise for profit. A joint venture can exist only by the agreement of the parties, and such an agreement may be found in the mutual acts and conduct of the parties.

PIK-Civil 3d 107.26; <u>see also</u> <u>Goben v. Barry</u>, 234 Kan. 721, 725, 676 P.2d 90, 95 (Kan. 1984) ("A joint venture is defined as an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each joint venturer shall stand in the relation of principal, as well as agent, as to each of the other co-venturers, with an equal right of control of the means employed to carry out the common purpose of the venture." (internal quotations and citations omitted)). "The existence of a joint venture may be inferred from the facts and circumstances presented at the trial which demonstrate that the parties, in fact, undertook a joint enterprise. The requisite intent of parties required to create a joint venture may be express or implied." <u>George</u>

---

[4] The parties do not dispute that Kansas law applies to all of plaintiff's claims.

v. Capital South Mortgage Investments, Inc., 265 Kan. 431, 453, 961 P.2d 32, 47 (Kan. 1998) (internal citations omitted).

To determine the existence of a joint venture, the following factors are to be considered: 1) the joint ownership and control of property; 2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earning; 3) a community of control over and active participation in the management and direction of the business enterprise; 4) the intention of the parties, express or implied; and 5) the fixing of salaries by joint agreement. PIK-Civil 3d 107.26. However, "[n]o single one of these acts is controlling in the determination of whether a joint venture exists." Cullip, 266 Kan. at 556-57, 972 P.2d at 782.

Plaintiff seeks to establish the existence of a joint venture by pointing out that: 1) Reeves Trucking and Waechter, L.L.C. had an agreement to apportion responsibilities relative to the operation of the tractor-trailer (i.e., Reeves Trucking was responsible for maintenance of the tractor-trailer but Waechter, L.L.C. was responsible for drivers, wages, insurance, permits, tags, and incidental expenses); and 2) Reeves Trucking and Waechter, L.L.C. shared revenues and profits (i.e., Waechter, L.L.C. received the first eight percent of gross revenues and reimbursement for its operating expenses but Reeves Trucking received the balance) and because of this profit sharing, both Waechter, L.L.C. and Reeves Trucking had a financial interest in the tractor-trailer's operation. (Doc. 123 at 3-4.)  Reeves Trucking counters that a lessor-lessee relationship cannot rise to the level of a joint venture. (Doc. 114 at 10-11; 129

-9-

at 2.)

Based on the facts currently in the record, the court cannot say that defendant is entitled to judgment as a matter of law on the issue of vicarious liability. It is clear and undisputed that Reeves Trucking owned the tractor-trailer and leased that tractor-trailer to Waechter, L.L.C. It is also clear that Reeves Trucking and Waechter, L.L.C. shared in the profits arising out of the business use of that tractor-trailer. Further, plaintiff has shown that Reeves Trucking and Waechter, L.L.C. shared responsibility for the tractor-trailer, as Reeves Trucking was responsible for the maintenance of the vehicle while Waechter, L.L.C. was responsible for maintaining the tractor-trailer's insurance, permits, and tags. Although the record also shows that Reeves Trucking had no "partnership agreement" with Waechter, L.L.C., <u>see</u> Doc. 114 at 4, and that Williams was solely the employee of Waechter, L.L.C., it is unclear whether Robert Reeves, as an employee of Waechter, L.L.C., would have had some day-to-day input over the use of the tractor-trailer.

On this record, the court finds that there is a dispute of fact regarding the existence of a joint venture between Reeves Trucking and Waechter, L.L.C. As a result, Reeves Trucking's motion for summary judgment on this issue must be denied.

**B. Negligent Entrustment**

Under Kansas law, negligent entrustment[5] of an automobile is a tort based on "knowingly entrusting, lending, permitting, furnishing,

---

[5] In Kansas, the torts of negligent entrustment, hiring, retention, or supervision are recognized as separate torts from a claim of negligence. <u>Marquis v. State Farm Fire & Cas. Co.</u>, 265 Kan. 317, 334-35, 961 P.2d 1213, 1225 (Kan. 1998).

or supplying an automobile to an incompetent or habitually careless driver." <u>McCart v. Muir</u>, 230 Kan. 618, 620, 641 P.2d 384 (Kan. 1982). Kansas follows the Restatement (Second) of Torts § 390, which states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely . . . to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

<u>Estate of Pemberton v. John's Sports Center, Inc.</u>, 35 Kan. App. 2d 800, 829, 135 P.3d 174, 187 (Kan. Ct. App. 2006).

The tort of negligent entrustment recognizes the duty "not to give control of a dangerous instrumentality to a person who is incapable of handling or using it carefully." <u>Id.</u> A claim for negligent entrustment of a vehicle arises only when the entruster has a superior right to control or possession of the vehicle. <u>Fletcher v. Anderson</u>, 27 Kan. App. 2d 276, 289-90, 3 P.3d 558, 567-68 (Kan. Ct. App. 2000) (citing <u>Snodgrass v. Baumgart</u>, 25 Kan. App. 2d 812, 815-16, 974 P.2d 604, 607-08 (Kan. Ct. App. 1999)). The comments to § 390 of the Restatement state that the duty applies to "anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration." Restatement (Second) of Torts § 390 comment a.

As the owner-lessor of the tractor-trailer, Reeves Trucking clearly had control over the tractor-trailer at the time it was leased to Waechter, L.L.C. In addition, because the court has already determined that the allegation of joint venture is a question for the

-11-

trier of fact, plaintiff's theory of negligent entrustment based on Reeves Trucking's vicarious liability for entrusting the tractor-trailer to Williams must also be allowed to proceed.  As a result, Reeves Trucking's motion for summary judgment on plaintiff's negligent entrustment claim must be denied.

**C. Negligent Failure to Equip the Tractor-Trailer and Negligent Maintenance**

In order to establish negligence, a plaintiff must prove the existence of a duty, a breach of that duty, an injury, and a causal connection between the duty and the injury suffered.  The breach of duty must be the actual and proximate cause of the injury.  Davey v. Hedden, 260 Kan. 413, 426, 920 P.2d 420, 429 (Kan. 1996).  Reeves Trucking moves for summary judgment on these two claims on the basis that plaintiff has not and cannot show a causal connection between the alleged failure to equip the tractor-trailer, or the alleged negligent maintenance of the tractor-trailer, and the January 2005 accident. (Doc. 114 at 8-9.)

Plaintiff points out that discovery in this litigation was bifurcated, and states that "discovery is not yet complete as to the issue of a causal connection between this violation and the loss of control of the truck and subsequent collision." (Doc. 123 at 15-16.) Reeves Trucking replies:

> [I]t has always been this Defendant's position that discovery has terminated with regard to Plaintiffs' claims against this Defendant.  In the Court's Scheduling Order of March 29, 2007, the Court bifurcated discovery and entered deadlines for discovery concerning the 'initial legal issues and defenses raised in the Parties Planning Report at pages 4-5. . .'  On page 4 of the Planning Conference, Defendant Reeves denied that they negligently maintained the trailer.

>Plaintiffs have had the opportunity to develop evidence on this theory and has failed to do so. Plaintiffs cannot now claim that future discovery will address this issue.

(Doc. 129 at 2.)

Reeves Trucking, along with other defendants, moved this court to bifurcate discovery in this case in March 2007, shortly after the case was filed. (Doc. 42.) In that motion, defendants stated:

>Therefore, the moving parties move the court for an Order allowing them the opportunity to conduct limited preliminary discovery to determine the position, or exposure of these parties as they may relate to any claims for alleged damages resulting from the accident in question. . . .
>
>Requiring the moving parties to participate in underlying discovery as to the cause of the accident, injuries, and plaintiff's damages thereby delaying determination of the moving parties' liability would be unjustifiably expensive and without merit. However, it would be in the interest of judicial economy to allow these parties to determine their legal position through filing dispositive motions after limited discovery is conducted.

Doc. 42 at 2 (motion to bifurcate discovery). Defendants' joint motion was granted by minute order, to be "outlined by the Scheduling Order to be entered as a result of the Scheduling Conference." See Doc. 44. The scheduling order states: "After consultation with the parties, and after agreement on the bifurcation of discovery in this case, the court enter this scheduling order which will govern only the initial legal issues and defenses raised in the parties' planning report on pages 4-5 . . ." Doc. 45 at 1 (scheduling order).

The parties' planning report on the referenced pages, in regard to Reeves Trucking, states: "The defendant Reeves and [a previously dismissed defendant] deny they are the constructive and/or statutory

-13-

employers of the defendant Williams.  They also deny they negligently maintained the trailer and they allege ownership of the truck does not create liability." Report of Parties' Planning Conference of February 26, 2007, at 4-5.  The parties' planning report on the referenced pages also outlines plaintiff's factual summary of the accident and some of defendants' factual and legal defenses.

It is clear from a reading of the <u>entire</u> record that the bifurcation of discovery limited discovery only to the issue of the legal relationship amongst the named defendants.  The court granted defendants' joint motion which asked for initial discovery on the parties' legal relationships and expressly excluded discovery on the issue of causation.  In addition, the scheduling order limited the initial discovery to <u>legal</u> issues, not the factual issue of failure to equip or negligent maintenance and causation therefrom.  Therefore, Reeves Trucking's motion based solely on causation is denied as premature.[6]

As a result of the court's determinations above, Reeves Trucking's motion for summary judgment is DENIED in its entirety.

**IV.  NYK AND LANDSTAR'S MOTIONS**

Plaintiff named as defendants NYK Group Americas, Inc. and Landstar Systems, Inc.  Defendants assert that these named entities are improper parties to the litigation and that the proper parties are NYK Lines (North America) Inc. and Landstar Ligon, Inc.  In her response, plaintiff does not oppose NYK Group Americas, Inc. and

---

[6]  The court expresses no opinion on the merits of plaintiff's claims for negligent failure to equip and negligent maintenance, but simply denies Reeves Trucking's motion because discovery on the claims has not yet been completed.

Landstar Systems, Inc.'s motion for summary judgment.  (Doc. 128 at 1-2.)  Accordingly, these defendants' motion is GRANTED.

In addition, plaintiff asserts she would not oppose a similar motion if brought by the proper party NYK Lines (North America) Inc. Plaintiff does, however, intend to file a motion to amend her complaint to add the proper party Landstar Ligon, Inc. as a defendant. (Doc. 128 at 2.)  Defendants' motion states that even if Landstar Ligon, Inc. should be added as a defendant, summary judgment would be appropriate.  Therefore, plaintiff responds to the motion as if the proper party had been named.  In an effort to streamline this litigation, to avoid the filing of unnecessary motions, and pursuant to the parties' agreement, the court will also address the motion as if the proper party had been named.[7]

NYK and Landstar entered a "Carrier/Broker Transportation Agreement" in March 2004.  The agreement between NYK and Landstar identifies Landstar as the carrier and NYK as the broker.  In January, 2005, NYK contracted with Landstar to arrange or facilitate the transport of a cargo container from Seattle, Washington to Junction City, Kansas.  Landstar is a motor carrier broker as well as a motor carrier.

---

[7] Before addressing Landstar's motion for summary judgment, the court must address a preliminary matter.  Landstar moves to strike the expert report of plaintiff's expert Lewis J. Grill.  Landstar's motion asks the court to exclude Grill's entire report and, in the alternative, asks for exclusion of selected portions designated by Landstar as containing improper legal opinions.  The court initially stated it would hold a Daubert hearing regarding Grill's testimony and Landstar's motion to strike.  However, after evaluating the motion for summary judgment, the court has determined that, even if Grill's expert opinion was considered, it would not save plaintiff's claims against Landstar.  Therefore, the court need not address Landstar's motion to strike and it is denied as moot.

Landstar and Waechter, L.L.C. have a long-term contractual and business relationship, and Waechter, L.L.C. has conducted business with Landstar a number of times.  Landstar and Waechter, L.L.C. entered into a brokering agreement on August 11, 2000, which outlined the duties and responsibilities of Waechter, L.L.C., expressly identified Waechter, L.L.C. as an independent contractor, and stated that Waechter, L.L.C. shall be responsible for its own costs and expenses, equipment, maintenance, personnel, taxes, and insurance.

On January 10, 2005, Landstar and Waechter, L.L.C. entered into an agreement relating to the land transport of a sealed shipment of Nike goods.  The agreement between Landstar and Waechter, L.L.C. stated the rate for the transport at issue and gave special loading/unloading instructions.  The agreement stated: "Pickup as Landstar Ligon, Flush to rear of trailer, Flat only!"  The agreement further stated: "Operator must call when loaded & unloaded. Must tell shipper loading for Landstar Ligon. Call 24-hours with any problems or claims."  Landstar's directions to Waechter, L.L.C. assigned a Landstar trip number and informed Waechter, L.L.C. of the pickup location, container number, and container weight.

After the January 2005 accident, Landstar identified itself as the motor carrier, in addition to Waechter, L.L.C., for the subject haul when it reported the accident to NYK.  When Landstar reported the accident to NYK, Landstar's address was used, and Landstar's safety director was identified as the motor carrier safety director.  On January 12, 2005, NYK notified the owner of the shipment that the container of cargo had been involved in an accident, and that Landstar had "another truck headed there to pick up the container" so that it

could be delivered.  Several additional documents name Landstar as the motor carrier.[8]

Plaintiff alleges an agency relationship existed between Landstar and Waechter, L.L.C.  Plaintiff asserts Waechter, L.L.C. was acting in the name of Landstar based on Landstar's alleged control over Waechter, L.L.C. and over the cargo shipment.  Plaintiff then alleges that, because of this control by Landstar, Landstar and Waechter, L.L.C. could not have been engaged in an independent contractor relationship.  Alternatively, plaintiff argues that if the court does find that an independent contractor relationship exists, then an exception to the rule of non-liability for independent contractors applies in this case; namely, that motor carriers operating under public franchises owe non-delegable duties.  Plaintiff next alleges Landstar was negligent in hiring Waechter, L.L.C.  (Doc. 128.) Landstar replies, generally denying its connection to any alleged negligence.  (Doc. 133.)

**A.  Agency versus Independent Contractor Relationship between Landstar and Waechter, L.L.C.**

"[T]he party relying on an alleged agency relationship has the burden of establishing its existence."  Town Ctr. Shopping Ctr., LLC v. Premier Mortgage Funding, Inc., 37 Kan. App. 2d 1, 6, 148 P.3d 565, 569 (Kan. Ct. App. 2006).  "Resolution of conflicting evidence which might establish the existence of an agency is for the finder of fact.

---

[8]  Plaintiff again attempts to establish many facts concerning Williams' alleged negligence surrounding the January 2005 accident and Waechter, L.L.C.'s alleged negligence in hiring and supervising Williams.  The court again finds these additional facts irrelevant to the issues involved in the present motion and admonishes plaintiff's counsel to stop wasting the court's time with irrelevant facts and argument.

-17-

However, where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor." <u>Perkins v. Dvorak</u>, No. 92,241, 2005 WL 1429864, at *4 (Kan. Ct. App. June 17, 2005) (internal citations omitted).

An agency relationship "can be created either expressly or implied by the conduct of the parties." <u>Senne & Co., Inc. v. Simon Capital Ltd. P'ship</u>, No. 93,434, 2005 WL 1805438, at *3 (Kan. Ct. App. July 29, 2005). "An agent has express authority if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act." <u>Id.</u> (internal citations omitted). "An implied agency may exist if it appears from the parties' words, conduct, or other circumstances that the principal intended to give the agent authority to act. An implied agency relationship may exist notwithstanding either a denial of the agency by the alleged principal or a lack of mutual understanding of agency between the parties. <u>Appeal of Scholastic Book Clubs, Inc.</u>, 260 Kan. 528, 541, 920 P.2d 947, 9__ (Kan. 1996) (internal citations omitted); <u>see also</u> <u>Appeal of Scholastic Book Clubs, Inc.</u>, 260 Kan. 528, 533, 920 P.2d 947, 951 (Kan. 1996) ("Express agency exists when the principal expressly authorizes the agent to do delegable acts, and implied agency may exist if it appears from the parties' words, conduct, or other circumstances that the principal intended to give the agent authority to act.").

An independent contractor is defined as one who contracts to do certain work according to his or her own methods, without being subject to the control of the employer except as to the results or

-18-

product of his or her own work.  Caring Hearts Personal Home Svcs., Inc. v. Hobley, 35 Kan. App. 2d 345, 352, 130 P.3d 1215, 1221 (Kan. Ct. App. 2006).  Indications of an independent contractor relationship include: (1) the existence of a contract for the performance by a person of a certain kind of work at a fixed price; (2) the independent nature of the business or distinct calling; (3) the employment of assistants with the right to supervise their activities; (4) the obligation to furnish necessary tools, supplies, and materials; (5) the right to control the progress of the work, except as to final results; (6) the time for which the worker is employed; (7) the method of payment-whether by time or by job; and (8) whether the work is part of the regular business of the employer. McCubbin v. Walker, 256 Kan. 276, 281, 886 P.2d 790, 794 (Kan. 1990).  The right to control, supervise, and direct an alleged employee's work is the primary test for determining an employer/employee relationship.  Falls v. Scott, 249 Kan. 54, 64, 815 P.2d 1104, 1112 (Kan. 1994).

Here, the only conclusion that can be drawn from the facts is that Waechter, L.L.C. was an independent contractor insofar as its relationship with Landstar is concerned.  Although Landstar and Waechter, L.L.C. did have an ongoing business relationship, Waechter, L.L.C. and Landstar had a singular contract for Waechter, L.L.C. to move the Nike shipment from Seattle to Junction City for a stated rate, i.e., a contract for performance for a fixed price.  Waechter, L.L.C. hired its own personnel and directly controlled that personnel. Waechter, L.L.C. furnished all equipment, contracted with Reeves Trucking to maintain that equipment, and was responsible for the tractor-trailer and driver's insurance.  Waechter, L.L.C. was employed

"for the job" and was paid "by the job."

The issue of control lies in favor of a finding of an independent contractor relationship as well. Although Landstar did give directions to Waechter, L.L.C. regarding where to pick up the shipment and how to load it, this is tantamount only to a direction to an independent contractor as to where the job is located. See McDonnell v. Music Stand, Inc., 20 Kan. App. 2d 287, 292, 886 P.2d 895, 899 (1994) ("An employer is allowed to control the results of an independent contractor's work."). Further, Landstar's requirement that Waechter, L.L.C. call each day of transport is no more than a daily check-in with regard to status, not a direction of how to perform the job.

Ultimately, when viewing all the factors, it is clear that an independent contractor relationship was present between Landstar and Waechter, L.L.C., and the question can be resolved no other way. See Falls v. Scott, 249 Kan. 54, 64, 815 P.2d 1104, 1112 (Kan. 1991) ("Where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor."). As a result, no agency relationship is present and, therefore, Landstar is not responsible for any alleged negligence of its independent contractor, Waechter, L.L.C.

**B. Motor Carriers and Non-Delegable Duties**

Plaintiff next argues that if this court finds that Waechter, L.L.C. was an independent contractor of Landstar, Landstar should still be found to be responsible for Waechter, L.L.C.'s alleged negligence because the duties associated with being a common carrier

are non-delegable duties.

The Kansas Supreme Court has discussed the issue of non-delegable duties:

> As a general rule, when a person (a contractee) lets out work to another and reserves no control over the work or workmen, the relation of contractee and independent contractor exists, and not that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the independent contractor. Balagna v. Shawnee County, 233 Kan. 1068, Syl. ¶ 3, 668 P.2d 157 (1983). An exception to the general rule is the inherently dangerous activity doctrine, which provides that one who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such dangers. Balagna, 233 Kan. 1068, Syl. ¶ 4 [668 P.2d 157].
>
> "Restatement (Second) of Torts § 427 defines the 'inherently dangerous activity' doctrine in the following language:
>
> 'One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.'" 249 Kan. at 59, 815 P.2d 1104.
>
> The court went on to state:
>
> "As to the question of what type of work is or is not considered to be inherently or intrinsically dangerous, courts have found no rule of universal application by which they may abstractly draw a line of classification in every case. Generally speaking, the proper test to determine if an activity is inherently dangerous is whether danger inheres in the performance of the work,

-21-

> and important factors to be understood and
> considered are the contemplated conditions under
> which the work is to be done and the known
> circumstances attending it.  It is not enough
> that it may possibly produce injury. Stated
> another way, intrinsic danger in an undertaking
> is one which inheres in the performance of the
> contract and results directly from the work to be
> done-not from the collateral negligence of the
> contractor.  <u>Reilly v. Highman</u>, 185 Kan. 537,
> 541, 345 P.2d 652 (1959); 41 Am. Jur. 2d,
> Independent Contractors § 41, p. 807; 57 C.J.S.,
> Master and Servant § 590, b.(1); Annot., 23
> A.L.R. 1084, 1095.  The same test is recognized
> in <u>Phillips Pipe Line Co. v. Kansas Cold Storage,
> Inc.</u>, 192 Kan. 480, 488, 389 P.2d 766 (1964)."
> 249 Kan. at 61, 815 P.2d 1104.

<u>Dillard v. Strecker</u>, 255 Kan. 704, 724-25, 877 P.2d 371, 384-85 (Kan.
1994) (internal citations omitted).

It is clear from this case law that Landstar's actions with
respect to the January 2005 accident, regardless of whether Landstar
is defined as a broker or as a motor carrier,[9] are not the type of
actions contemplated by Kansas law as involving a "special danger to
others."  The transportation of goods along the public roadway may,
of course, possibly produce injury.  This is not enough, however.
There was no "intrinsic danger" in performing the contract at issue.
The goods involved - shoes - were not dangerous, and moving those

---

[9] The parties dispute whether Landstar is a "broker" or a "motor
carrier," as defined by the relevant Federal Motor Carrier Safety
Administration regulations.  The regulations state: "'Broker' means
a person who, for compensation, arranges, or offers to arrange, the
transportation of property by an authorized motor carrier.  Motor
carriers, or persons who are employees or bona fide agents of
carriers, are not brokers within the meaning of this section when they
arrange or offer to arrange the transportation of shipments which they
are authorized to transport and which they have accepted and legally
bound themselves to transport." 49 C.F.R. 371.2(a).  The court finds
this disputed fact irrelevant to its analysis.  Even assuming Landstar
was acting as a motor carrier as plaintiff asserts, no claim can
legally survive against it on these facts.

shoes from Washington to Kansas was a common, everyday occurrence. The work that was to be done was not inherently dangerous. Rather, any potential danger came from the actions of the driver of those goods during transport.

Further examination of the Restatement (Second) of Torts, makes the court's conclusion more clear. Section 427 (the section relied upon by <u>Dillard</u>) states that it is a duplication of the rule stated in section 416, which is titled "Work Dangerous in Absence of Special Precaution." The comments and one of the examples in Section 416 are particularly helpful. They state:

> In order for the rule stated in this Section to apply, it is not essential that the work which the contractor is employed to do be in itself an extra-hazardous or abnormally dangerous activity, or that it involve a very high degree of risk to those in the vicinity. It is sufficient that it is likely to involve a peculiar risk of physical harm unless special precautions are taken, even though the risk is not abnormally great. A "peculiar risk" is a risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work done, which calls for special precautions. Thus if a contractor is employed to transport the employer's goods by truck over the public highway, the employer is not liable for the contractor's failure to inspect the brakes on his truck, or for his driving in excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for. But if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability for the contractor's failure to take special precautions to anchor them on his trucks.

Restatement (Second) Torts § 416 cmt. d (internal citations omitted). Upon the facts stated herein, Landstar is more akin to the contractee

who employs a contractor to transport goods over the public highway, in which the risk involved is in no way peculiar or non-ordinary. This is not a situation where Landstar contracted with Waechter, L.L.C. to transport dangerous materials over the public highways, such as the "giant logs weighing several tons" from the example given in the Restatement.

Therefore, the general rule applies, that a contractee who "lets out work to another and reserves no control over the work or the workmen" is not liable for the alleged negligence or improper execution of the work by the independent contractor. Landstar, as the contractee, is not liable for the alleged negligence of Waechter, L.L.C., as the independent contractor, on the theory of non-delegable duty.

### C. Negligent Hiring of Waechter, L.L.C.

Finally, plaintiff argues that Landstar was negligent in hiring Waechter, L.L.C. as its independent contractor. "Generally, the employer of an independent contractor is not liable for injuries caused by the negligence of an independent contractor. Nevertheless, there are various exceptions to this rule, including the negligence of an employer in selecting, instructing, or supervising the contractor." Dye v. WMC, Inc., __ P.3d __, 2007 WL 3396756, at *6 (Kan. Ct. App. Nov. 16, 2007) (internal citations omitted). Kansas, therefore, recognizes a cause of action for this alleged negligence.

Kansas follows the Restatement (Second) of Torts § 411. McDonnell v. Music Stand, Inc., 20 Kan. App. 2d 287, 293, 886 P.2d 895, 900 (1994). Section 411 states:

An employer is subject to liability for physical

-24-

harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

<u>McDonnell</u>, 20 Kan. App. 2d at 293, 886 P.2d at 900.

The <u>Dye</u> court discussed several examples of the potential liability for negligent hiring of an independent contractor:

The comments to Restatement § 411 provide several illustrations of where liability may lie for the employer of an independent contractor, including the following:

"The omnibus with which A, the owner of a hotel, conveys his guests from the railway station to the hotel is damaged in a collision. A contracts with B, the owner of a garage, to carry A's guests in B's bus. A knows that C, the only driver who is available for this service, has only driven a car for a few days. While driving some of A's guests from the station, C mistakes the accelerator for the brake, which causes a collision between the bus and an automobile in which D is driving. A is subject to liability to D and to his guests in the bus for any harm cause by the unskillfulness of C." Restatement (Second) of Torts § 411, comment b, illus. 3, p. 378.

Another illustration states:

"A, a builder, employs B, a teamster, to haul material through the streets from a nearby railway station to the place where A is building a house. A knows that B's trucks are old and in bad condition and that B habitually employs inexperienced and inattentive drivers. C is run over by a truck carrying A's material and driven by one of B's employees. A is subject to liability to C if the accident is due either to the bad condition of the truck or the inexperience or inattention of the driver." Restatement (Second) of Torts § 411, comment d, illus. 5, p. 380.

<u>Dye v. WMC, Inc.</u>, ___ P.3d ___, 2007 WL 3396756, at *7 (Kan. Ct. App.

Nov. 16, 2007).

Regardless of whether plaintiff has established that Landstar hired Waechter, L.L.C. to do the <u>type</u> of work contemplated by this rule (<u>i.e.</u>, see the section immediately above), it is clear that plaintiff has alleged no facts regarding <u>how</u> Landstar was negligent in hiring. Plaintiff has alleged additional facts in an attempt to show that Waechter, L.L.C. was negligent in hiring <u>Williams</u>, but this does not equate to alleging facts that could show that Landstar was negligent in hiring <u>Waechter, L.L.C.</u> For example, the facts alleged are not akin to those stated in section 411 where the contractee employs a contractor despite knowing that the contractor uses old equipment in bad condition and employs inexperienced and inattentive drivers.

Plaintiff has not made a prima facie showing under section 411 and does not even attempt to meet the element relating to Landstar's breach of its duty in hiring. Plaintiff does not contend that she needs additional discovery on this issue. Plaintiff has failed to show that there is a genuine issue of material fact and Landstar has shown it is entitled to judgment as a matter of law on this claim. As a result of the court's determinations above, NYK and Landstar's motion for summary judgment is GRANTED in its entirety.

## V. CONCLUSION

Defendant Reeves Trucking's motion for summary judgment (Doc. 114) is DENIED for the reasons stated more fully herein. Defendant NYK and Landstar's motion for summary judgment (Doc. 115) is GRANTED for the reasons stated more fully herein. Defendant NYK and Landstar's motion to strike (Doc. 79) is DENIED as moot. This case

-26-

is referred back to the assigned magistrate judge for further case management.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u> <u>v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this ___3rd___ day of January 2008, at Wichita, Kansas.


<u>s/ Monti Belot                    </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-27-